UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BOLLORE S.A.,

       Plaintiff,                CIVIL ACTION NO. 04-CV-73867-DT

  vs.

                                   DISTRICT JUDGE ANNA DIGGS TAYLOR

MADISON HEIGHTS TOBACCO    MAGISTRATE JUDGE MONA K. MAJZOUB
INC., ET. AL.,

       Defendants.
_____/

**OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND DENYING PLAINTIFF'S MOTION FOR CONTEMPT**

      Plaintiff filed the instant action on September 30, 2004 against multiple defendants alleging trademark violations under the Lanham Act. Plaintiff manufactures Zig Zag tobacco papers and Defendants own and operate retail stores specializing in the sale of tobacco and related products. Plaintiff alleges that Defendants are selling counterfeit Zig Zag cigarette paper products. On October 26, 2004, the parties consented to the entry of a preliminary injunction that provides, in relevant part, that:

> Defendants . . . are hereby preliminarily enjoined and will cease and desist and refrain in the future from, anywhere in the world, knowingly:
>
> Directly or indirectly importing, manufacturing, selling, distributing, advertising, promoting, making or offering for sale any counterfeit, gray market infringing Zig-Zag cigarette paper products . . .
>
> **IT IS HEREBY ORDERED** that Defendants shall allow representatives of Plaintiffs to inspect their inventory of Zig Zag, and if Plaintiffs' representatives discover infringing, counterfeit and/or grey [sic] market goods, Plaintiffs' representatives shall be permitted to immediately confiscate such products . . .

(Docket # 10, Preliminary Injunction Order on Consent signed by the Honorable Anna Diggs Taylor). The Preliminary Injunction Order also contains an incomplete "list of reliable sources for legitimate Zig-Zag cigarette paper products . . . provided by Plaintiffs" *Id.*

Plaintiff alleges, since entry of the Preliminary Injunction, Defendants have continued to sell counterfeit Zig Zag products. In February 2005, Plaintiff's representatives visited Defendants' stores, inspected Defendants' inventory of Zig Zag merchandise, and confiscated all counterfeit Zig Zag products from Defendants' stores.

On February 16, 2005, Defendants filed a Motion for Protective Order to which Plaintiff responded on March 2, 2005 along with a Motion for Contempt. Defendants filed a response to Plaintiff's motion to which Plaintiff filed a reply and Defendants filed a Supplemental Brief in support of their motion. Both motions have been referred to the undersigned for hearing and determination pursuant to 28 U.S.C. § 636(b)(1)(A) and the parties presented oral arguments on May 9, 2005.

## I. DEFENDANTS' MOTION FOR PROTECTIVE ORDER

Defendants assert that "by sending cease and desist letters hours before raiding the Smokers Outlet stores, Plaintiffs have annoyed and embarrassed Defendants and have unjustly pursued discovery contrary to the letter and spirit of this Court's October 26, 2004, discovery order." (Defendants' Motion for Protective Order, ¶ 10). Defendants now seek "an Order requiring Plaintiffs to coordinate an inspection of each store prior to carrying out any 'raids.'" *Id.* ¶ 14. Defendants also ask the Court for a ruling that the "'fruits' of the February 4, 2005, 'raids' be excluded from evidence with respect to any attempt by Plaintiffs to recover damages." *Id.* ¶ 16. Finally,

Defendants seek an Order "precluding Plaintiffs from seeking damages with respect to any goods at any of its stores unless Plaintiffs have previously made an agent available to help assist Defendants in determining which goods are authentic and which goods are counterfeit." *Id.* ¶ 17.

Fed. R. Civ. P. 26 allows courts to issue a protective order if justice requires and to protect individuals from annoyance, embarrassment, oppression, or undue burden or expense. The burden of establishing good cause for a protective order rests with the movant. *See General Dynamics Corp. V. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973). "To show good cause, a movant for a protective order must articulate specific facts showing clearly defined and serious injury resulting from the discovery sought and cannot rely on mere conclusory statements. *Avirgan v. Hull*, 188 F.R.D. 252, 254 (D. D.C. 1987).

Defendants essentially complain that Plaintiff violated the standing Preliminary Injunction by sending its representatives, unannounced, to Defendants' stores for the purpose of inspecting and confiscating counterfeit Zig Zag products. The Preliminary Injunction, however, does not require Plaintiff to "coordinate an inspection" of Defendants' stores. Instead, the Order provides that:

> Defendants shall allow representatives of Plaintiffs to inspect their inventory of Zig Zag, and if Plaintiffs' representatives discover infringing, counterfeit and/or grey [sic] market goods, Plaintiffs' representatives shall be permitted to immediately confiscate such products . . .

(Preliminary Injunction of October 26, 2004).  Thus, Defendants agreed to "allow representatives of Plaintiffs to inspect their inventory of Zig Zag . . . and confiscate such [counterfeit] products . . ." (Preliminary Injunction of October 26, 2004). Plaintiff's actions were consistent with the Preliminary Injunction entered into by consent of the parties. After having consented to such terms and conditions as set forth in the Preliminary Injunction, Defendants cannot

now argue that they were embarrassed or annoyed when Plaintiff exercised its rights under the Preliminary Injunction Order and confiscated Defendants' counterfeit Zig Zag merchandise. To the extent that Defendants seek to modify the existing Preliminary Injunction, the Court declines to do so. A request to modify the language of the Preliminary Injunction should be made by motion filed with Judge Taylor.

Pursuant to Fed. R. Civ. P. 37(b)(2)(B), Defendants request an Order excluding from evidence the counterfeit products confiscated during Plaintiff's inspections. Defendants' request is rejected for two reasons. First, as previously pointed out, Plaintiff acted pursuant to and consistent with the Preliminary Injunction entered by this Court on October 26, 2004. Furthermore, Fed. R. Civ. P. 37(b)(2)(B) applies only where "a party fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, or if a party fails to obey an order entered under Rule 26(f) . . ." In this case, there was no order "to provide or permit discovery". The Preliminary Injunction, which was not specific to any discovery requests, was entered to enjoin the unlawful distribution of counterfeit Zig Zag products. Rule 37(b) is invoked "provided that there is a clearly articulated order of the court requiring specific discovery." *Daval Steel Products v. Fakredine*, 951 F.2d 1357 (2d Cir. 1991).

Accordingly, Defendants' Motion for Protective Order is **DENIED**.

**IT IS SO ORDERED.**

## II. PLAINTIFF'S MOTION FOR CONTEMPT

In its Motion for Contempt, Plaintiff contends that Defendants have violated the October 26, 2004 Preliminary Injunction by continually offering for sale counterfeit Zig Zag products. "In

contempt proceedings, 'the basic proposition [is] that all orders and judgments of courts must be complied with promptly.'" *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 590 (6th Cir. 1987)(quoting *Jim Walter Resources, Inc. v. Int'l Union, United Mine Workers*, 609 F.2d 165, 168 (5th Cir. 1980)). A party moving for contempt must demonstrate by clear and convincing evidence that an individual "'[violated] a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order.'" *Cincinnati Bronze*, 829 F.2d at 591 (citing *SEC v. First Financial Group of Texas, Inc.*, 659 F.2d 660, 669 (5th Cir. 1981); *see also Consolidation Coal Co. v. Local Union No. 1784, United Mine Workers of America*, 514 F.2d 763, 766 (6th Cir. 1975)("a degree of certainty is required which leaves no fair ground of doubt as to the violation of the court's order. [] [T]he petitioner in a civil contempt proceeding must overcome a heavy burden of proof.").

Under the terms of the Preliminary Injunction, Defendants were "enjoined . . . from . . . knowingly . . . selling, distributing, . . . or offering for sale any counterfeit . . . Zig-Zag cigarette paper products[]" (Preliminary Injunction of October 26, 2004). Plaintiff argues, however, that it need not show that Defendants "knowingly" distributed counterfeit Zig Zag products. Instead, Plaintiff asserts that the Lanham Act imposes strict liability for the distribution of counterfeit products and "an intentional or knowing violation of [the Act] will simply result in a larger damage award for the Plaintiffs. It is not necessary that the defendants engage in a knowing distribution for liability to attach in the first instance." (Plaintiff's Brief in Support of Motion for Contempt, pg. 10). The Court disagrees.

While it may be true that the Lanham Act imposes liability without regard to whether a defendant knows that he is distributing counterfeit product, such is not the issue before the Court.

Plaintiff has filed a Motion for Contempt for which its burden is to prove that Defendants violated the Preliminary Injunction entered by this Court and which is controlling in this case. In order for Plaintiff to succeed on its Motion for Contempt, it must demonstrate by clear and convincing evidence that Defendants violated the Preliminary Injunction by "knowingly" distributing counterfeit Zig Zag products.

Defendants deny having any knowledge that some, or all, of their Zig Zag merchandise was counterfeit. In an affidavit of Defendants' counsel, Joseph Shallal avers that "Defendants could not tell the difference between genuine and alleged counterfeit and/or grey market goods" and that "Defendants needed a Zig Zag representative to come to the stores to decipher said products." (Affidavit of Joseph Shallal, ¶¶ 4-5). At the hearing on this matter, Defendants' counsel contended that even if this Court were to put a gun to his head he would be unable to distinguish between real and counterfeit Zig Zag products. Given the disputed testimony between Plaintiff and Defendants as to whether Defendants "knowingly" distributed counterfeit Zig Zag products, the Court must now consider Plaintiff's proofs accompanying its Motion for Contempt.

In support of its Motion for Contempt, Plaintiff submits the affidavit of its sales representative Tim Fox who indicates that:

> 3. For approximately the last four years I have made numerous visits to [Defendants'] various [stores][]. On more than fifteen occasions I have discovered counterfeit ZIG-ZAG cigarette paper products . . . . During each such visit I have provided the clerk, manager, or owner with a 'cease and desist packet' containing three letters that set forth (I) that the distribution of counterfeit goods is unlawful; (ii) how to identify counterfeit Zig Zag cigarette paper products from legitimate products; . . .
>
> []
>
> 5. During each such visit in which I left a cease and desist packet I

-6-

> also provided my business card to the clerk, manager or owner with whom I spoke. My business card lists, among other things, a toll free '1-800' telephone number at which I can be contacted at any time of the day or night.
>
> []
>
> 12 Since [the] October 18, 2004 [hearing on Plaintiff's Motion for Preliminary Injunction], I have not received a single telephone call, facsimile, letter, or e-mail from either counsel for [Defendants] or from any of the owners, managers, or clerks of the [Defendants' stores]. Simply put, no one has asked me at any time to inspect their Zig Zag cigarette paper product inventory. I have never refused, obviously, to make such an inspection since no request has ever been made.

(Declaration of Tim Fox, attached to Plaintiff's Motion for Contempt). Plaintiff did not send Mr. Fox or any other representatives to inspect Defendants' merchandise between entry of the Preliminary Injunction and the February inspections which resulted in the confiscation of Defendants' counterfeit Zig Zag merchandise.

The Court declines to conclude that the Fox declaration proves that Defendants knowingly distributed counterfeit Zig Zag products after entry of the Preliminary Injunction. While serving as the factual basis for Plaintiff's trademark infringement claims, the Fox declaration does little to establish that Defendants violated the Preliminary Injunction of October 26, 2004. Mr. Fox's declaration tends only to show that Defendants could have taken additional steps after the entry of the Preliminary Injunction to ensure the legitimacy of its Zig Zag products. The Court is unpersuaded, however, that Defendants' past practices leading to the instant lawsuit should be conclusive as to whether Defendants violated the Preliminary Injunction of October 2004.

Plaintiff also points out that Defendants are unable to produce any invoices since the entry

of the Preliminary Injunction showing that Defendants have purchased legitimate Zig Zag product from authorized distributors. During oral argument, Defendants' counsel represented that since October 2004 Defendants had purchased Zig Zag products only from the authorized sources contained in the Preliminary Injunction. However, when asked by the Court, Defendants' counsel conceded that no documentary evidence had yet been made available to support Defendants' assertions as to their suppliers of Zig Zag products since October 2004. However, as previously mentioned, it is Plaintiff's burden to demonstrate that Defendants "knowingly" distributed counterfeit Zig Zag products after entry of the Preliminary Injunction. The Court is unpersuaded that Plaintiff has carried its burden based on an argument that if Defendants cannot produce invoices showing purchases from authorized distributors, their purchases must have been from suspect sources.

Next, Plaintiff points to an invoice dated June 24, 2004 from Jazzoo Wholesale to one of Defendants' stores that indicates Plaintiff purchased a quantity of Zig Zag White for $1,937.50. Plaintiff contends that the Jazzoo invoice:

> conclusively establishes that . . . Defendants made purchases of Zig Zag cigarette paper products from wholesalers and jobbers not listed in the Preliminary Injunction as recently as June 24, 2004. Thus . . . . Defendants were on notice that at least part of their inventory was obtained from unapproved sources and had the potential to be counterfeit. Despite this knowledge, . . . Defendants did not segregate old product from new product, they did not inspect the Zig Zag inventory, nor did they request that Plaintiffs' agents inspect their inventory to insure its integrity after the issuance of the Preliminary Injunction.

(Plaintiff's Brief in Support of Motion, pg. 11). Plaintiff asserts that such "'willful ignorance' on the part of the . . . Defendants is tantamount to a knowing distribution of counterfeit goods." *Id.* (citing *Louis Vuitton S.A. v. Lee*, 875 F.2d 584, 590 (7th Cir. 1989). Again, this Court disagrees.

The Jazzoo invoice is dated approximately three months prior to the filing date of the instant action and four months prior to entry of the Preliminary Injunction. If anything, the Jazzoo invoice establishes the factual basis upon which Plaintiff's instant complaint is premised. The Court is also unpersuaded that Defendants' failure to inspect and or segregate the merchandise purchased from Jazzoo is tantamount to a "knowing" distribution of counterfeit product. To draw that conclusion would require the Court to (1) conclude that the Jazzoo merchandise was indeed counterfeit, (2) conclude that the Jazzoo merchandise was still on the shelves for purchase in Defendants' stores *on or after* the Preliminary Injunction was entered on October 26, 2004, and (3) conclude that Defendants kept separate their inventory of Zig Zag product such that they were capable of segregating suspected counterfeit product. Although Plaintiff has made a strong showing that the Jazzoo merchandise may have been counterfeit, Plaintiff cannot offer any evidence as to the second or third hypothetical conclusions. Without more, the Court concludes that the Jazzoo invoice does not establish that Defendants' knowingly distributed counterfeit Zig Zag product after the entry of the October 2004 Preliminary Injunction.

Plaintiff asserts that if Defendants were interested in ensuring the legitimacy of its products, they would have called Plaintiff's representatives to conduct routine inspections of their Zig Zag merchandise. Although Defendants could have exercised greater diligence in ensuring the legitimacy of their Zig Zag merchandise, their failure to take such precautions does not demonstrate that they knowingly distributed counterfeit products in violation of the Preliminary Injunction. If anything, Defendants have recklessly conducted their business practices in light of the pending action. The Court cannot conclude based on Plaintiff's proofs, however, that Defendants knowingly distributed counterfeit Zig Zag products after entry of the Preliminary Injunction.

The Court is similarly unconvinced by Plaintiff's argument that Defendants were willfully blind of the fact that they were selling counterfeit Zig Zag product. Plaintiff cites *Louis Vuitton v. Lee*, 875 F.2d 584 (6th Cir. 1989) to support its theory that Defendants' "willful blindness" amounts to a knowing violation of the Preliminary Injunction. In *Louis Vuitton*, the Sixth Circuit pointed out that "although [15 U.S.C. §] 1117(b) requires a showing that the defendant's violation involved 'knowing such mark . . . is counterfeit,' it is enough *for these purposes* that the defendant failed to inquire further because he was afraid of what the inquiry would yield. Willful blindness is knowledge enough." *Louis Vuitton*, 875 F.2d at 590 (emphasis added)(citing Joint Statement on Trademark Counterfeiting Legislation, 130 Cong. Rec. At H12076-77, ("Of course, if the prosecution proves that the defendant was 'willfully blind' to the counterfeit nature of the mark, it will have met its burden of showing 'knowledge'")).

The Sixth Circuit's decision in *Louis Vuitton* is expressly limited to proof of knowledge under 15 U.S.C. § 1117(b) as clearly demonstrated by the court's reliance on and analysis of the statute's legislative history. Congress's underlying reasons for promulgating § 1117(b) have no application to the Preliminary Injunction entered by this Court. Furthermore, the parties consented to the language of the Preliminary Injunction which enjoined Defendants from "knowingly" distributing counterfeit Zig Zag merchandise. If the Plaintiff intended the Preliminary Injunction to cover instances of imputed knowledge or willful blindness, such language should have been included in the Preliminary Injunction Order.

Having failed to demonstrate by clear and convincing evidence that Defendants violated the October 26, 2004 Preliminary Injunction by knowingly distributing counterfeit Zig Zag papers products, Plaintiff's Motion for Contempt is **DENIED.**

**IT IS SO ORDERED.**

Pursuant to Fed. R. Civ. P. 72(a), the parties have a period of ten days from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. 636(b)(1).

Dated: May 16, 2005                     /s/ Mona K. Majzoub
                                        MONA K. MAJZOUB
                                        UNITED STATES MAGISTRATE JUDGE

**Proof of Service**

I hereby certify that a copy of this order was served upon counsel of record on this date.

Dated: May 16, 2005                     s/ Lisa C. Bartlett
                                        Courtroom Deputy